IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CASCADIA WILDLANDS, an Oregon            Case No. 6:12-cv-01739-AA
non-profit corporation;
THE CENTER FOR BIOLOGICAL                    OPINION AND ORDER
DIVERSITY, an Arizona
non-profit corporation; and
BENTON FOREST COALITION, an
Oregon corporation,

          Plaintiffs,

     v.

BUREAU OF LAND MANAGMENT, an
administrative agency of the
United States Department of
Interior,

          Defendant.
_____

AIKEN, Chief Judge:

     Plaintiffs Cascadia Wildlands, et. al, challenge the Bureau of

Land Management's (BLM) alleged failure to comply with the Forest

1 - OPINION AND ORDER

Land Policy and Management Act (FLPMA) and the Northwest Forest Plan (NFP) in connection with the Rickard Creek logging project in Benton County, Oregon. Plaintiffs now move to supplement the record. The motion is denied.

## I. BACKGROUND

The Rickard Creek logging project allegedly would remove trees that are occupied by the red tree vole. Under the NFP, the red tree vole is classified as a Category C species, which mandates that the BLM can only disturb the species' habitat after conducting surveys and determining that the location is not a high-priority site for ensuring the persistence of the species. Additionally, the Rickard Creek project is located in the BLM's Salem District which is governed by the Salem District Record of Decision and Resource Management Plan (the Salem RMP). Under the Salem RMP, the BLM is directed to modify, relocate, or abandon a project that contributes toward the need to list a species. The BLM surveyed the Rickard Creek project area and determined that it was a non-high priority site.

On September 26, 2012, plaintiffs filed suit. Plaintiffs allege that the BLM violated the NFP by improperly classifying the project area as non-high priority site. They also contend that the Rickard Creek project contributes toward the need to list the red tree vole, and thus, the BLM violated FLPMA when it failed to abandon the project as required by the Salem RMP.

2 - OPINION AND ORDER

On February 6, 2013, plaintiffs filed their present motion to supplement the administrative record with two documents that allegedly relate to their claims against the BLM. Defendant opposes the motion.

## II. STANDARD OF REVIEW

When reviewing agency action under the APA "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1973). However, the Ninth Circuit has established four exceptions to this general rule, allowing the reviewing court to consider evidence outside the administrative record in the following circumstances:

> (1) if necessary to determine whether the agency has considered all relevant factors and has explained its decision,
>
> (2) when the agency has relied on documents not in the record,
>
> (3) when supplementing the record is necessary to explain technical terms or complex subject matter, [or] ...
>
> (4) when plaintiffs make a showing of agency bad faith.

Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv., 450 F.3d 930, 943 (2006) (quoting Sw. Ctr. for Biological Diversity v. United States Forest Serv., 100 F.3d 1443, 1450 (9th Cir. 1996)). "These limited exceptions operate to identify and plug holes in the administrative record. Though widely accepted, these exceptions are narrowly construed and applied." Lands Council v. Powell, 395 F.3d

3 - OPINION AND ORDER

1019, 1030 (9th Cir. 2005). Thus, "[c]onsideration of the evidence
to determine the correctness or wisdom of the agency's decision is
not permitted, even if the court has also examined the
administrative record." Asarco, Inc. v. U.S. Envtl. Prot. Agency,
616 F.2d 1153, 1160 (9th Cir. 1980).

### III. DISCUSSION

#### A. Eugene BLM District Resource Management Plan

Plaintiffs seek to supplement the record with excerpts from
the 1995 Eugene BLM District Resource Management Plan (the Eugene
RMP) under the first and third exceptions to the general rule.
Under the first exception, plaintiffs argue that the Eugene RMP
will assist the court in determining whether the BLM "has
considered all relevant factors and has explained its decision."
Ctr. for Biological Diversity, 450 F.3d at 943. Under both the
Eugene RMP and the Salem RMP, the BLM must modify, relocate or
abandon potentially impacting proposed actions to avoid
contributing to the need to list a candidate species.

Plaintiffs seek to supplement the administrative record with
the Eugene RMP, because they contend it provides a fuller
explanation of what it means to "contribute toward the need to
list" a candidate species by providing what plaintiffs characterize
as examples of projects that do not contribute to the listing of a
species. They argue that the "contribution" standard in the Salem

and Eugene RMPs are identical, and that the Eugene RMP elaborates on the meaning of that standard. Thus, plaintiffs maintain that "[c]omparing the Rickard Creek project to those projects listed by the BLM in the Eugene RMP will help the court determine whether this project contributes towards the need to list the red tree vole, which is on of the relevant factors the BLM *should* have considered in formulating its decision." (Doc. #26-1 at 4).

Defendant responds that the Eugene RMP will not assist the court in this case because the Rickard Creek project is located in the Salem District, and the BLM made its decision based on the Salem RMP, not the Eugene RMP. Thus, defendant contends that the Eugene RMP is irrelevant to this court's consideration of plaintiffs' claim that the BLM violated the Salem RMP.

I agree with defendant that the Eugene RMP is not "necessary to determine whether the agency has considered all relevant factors and has explained its decision." Rather, as the project is located within the Salem RMP, the record already contains documents sufficient to determine whether the BLM considered the contribution standard set forth in the Salem RMP and whether it explained its decision with respect to that factor. Ctr. for Biological Diversity, 450 F.3d at 943. For example, in the Biological Evaluation for the Rickard Creek Project, the BLM discusses the impact of the project on the red tree voles in the project area (AR

5 - OPINION AND ORDER

00650-51, 675-79) and concludes that "[t]he proposed action would not contribute to the need to list any special status wildlife species." (AR 00662). Additionally, in the Final Decision and Decision Rationale, the BLM states that it considered the management direction contained in the Salem RMP (AR 00123) and concluded that "[g]iven that red tree voles are 'believed to be more abundant and well distributed than areas farther north in the Oregon Coast Range,' I do not believe the activities associated with this project will contribute to the need to list the species." (AR 00125) (internal citation omitted).

Furthermore, I disagree with the plaintiffs' characterization of the Eugene RMP excerpt. Plaintiffs contend that it provides "examples of certain types of projects that would not contribute towards the need to list the species." (Doc. #26-1 at 3-4). However, the examples plaintiffs cite appear to be a list of directives that relate to Federal Candidate Species, State Listed Species, and Bureau Sensitive Species. For example, the Eugene RMP excerpt lists the following directives:

- "Modify, relocate, or abandon potentially impacting proposed actions to avoid contributing to the need to list Federal Candidate species, State Listed species, Bureau Sensitive species, SEIS Special Attention Species or their essential habitats."

- "Coordinate with the USFWS, NMFS, and other appropriate agencies and organizations and jointly endeavor to recover Federal listed and proposed plant and animal species and their habitats and ecosystems."

6 - OPINION AND ORDER

- "Coordinate with appropriate agencies, landowners and managers in the region to assess the distribution, abundance, ecology and potential impacts of Candidate and Bureau Sensitive species and their habitat."

- "Active management could include protection, acquisition, habitat enhancement, reintroduction, control of exotic species, and the development/implementation of interagency cooperative plans."

- "Continue with prescribed conservation actions for species dropped from the special status list (such as Federal C3 species) if Federal land management actions were a factor in considering the species no longer eligible for listing."

- "Conservation plans for delisted species may be modified as needed based on adequacy of existing rangewide conditions and conservation management."

- "Management emphasis will be to accumulate ecological information and distributional data to enhance our ability to protect and manage these species in the future."

(Doc 26, Ex. A at 4). It is unclear to the court, and not specifically outlined in plaintiffs' briefs, how these directives elaborate on the contribution standard so as to warrant inclusion in the record. It is also unclear how these directives can be properly characterized as "examples of projects" that satisfy the contribution standard as claimed by plaintiffs. (Doc. #32 at 3).

I also reject plaintiff's argument that the Eugene RMP excerpt falls within the third exception as "necessary to explain technical terms or complex subject matter." Plaintiffs argue that the phrase "contributing towards the need to list" is a technical phrase that

7 - OPINION AND ORDER

involves a number of technical determinations of species populations, habitats, and the effects of the project on the species. Plaintiffs contend that the Eugene RMP explains the meaning of this technical phrase by providing examples of projects that do or do not satisfy the "contribution" standard.

I find that the language "contributing towards the need to list" is not a technical phrase. Essentially, the contribution language asks whether a project would lead a species to be listed. While making that determination undoubtedly involves a number of considerations, the phrase itself is not technical, and the administrative record is sufficient to explain the underlying determinations. Furthermore, even the "contribution" standard was a technical phrase, the excerpt provided by plaintiffs does not explain that phrase. As explained above, the excerpt provides little, if any, elucidation of that term as no clear language suggests that the directives are meant to be examples of projects that comply with the contribution standard. Thus, I conclude that the Eugene RMP excerpt does not fall within either the first or third exception to the general rule against supplementing the record, and therefore deny plaintiffs' motion with respect to that exhibit.

B. Watershed Analyses

Plaintiffs also seek to supplement the record with excerpts

8 - OPINION AND ORDER

from three watershed analyses that were used to create a BLM Pilot
Project which provided guidance for determining whether to identify
sites within the pilot area as non-high priority vole sites. (AR
02067).

In 2004, the BLM completed a Pilot Project that reviewed a
select number of watersheds in the South Coast Range and South
Cascades that contained vole sites and set forth guidelines for
determining if a vole site in those watersheds was a non-high
priority site.[1] (AR 02062-65). The BLM rated the watersheds in the
Pilot area as High, Moderate, or Low based on the amount of federal
forest capable land in reserves. (AR 02078). Those ratings were
then used to create guidelines for determining whether red tree
vole sites in these watersheds should be considered non-high
priority sites. Id. The red tree vole sites in the watersheds rated
as "High Reserve Watersheds" were recommended to be considered non-
high priority based on the fact that they contained a higher amount
of older forest habitats and a high percentage of current red tree
vole habitat reserved. Id. The Moderate and Low Reserve Watersheds,
however, were not released as non-high priority sites due to a
number of factors including a less well-connected amount of federal
reserve lands. (AR 02079). The Pilot Project itself is currently

---

[1]The Mary's River Watershed, in which the Rickard Creek
project is located, was not part of the Pilot area. (AR 02071 and
02082).

part of the record and contains detailed explanations for how the BLM rated the watersheds. (AR 2067-83).

Plaintiffs argue that Pilot Project was based, in part, on the watershed analyses they seek to admit. Thus, plaintiffs seek to supplement the record with excerpts from three watersheds that were part of the Pilot Project: (1) North Fort of the Siuslaw River Watershed (rated as a High Reserve Watershed); (2) Middle North Umpqua Watershed (rated as a Moderate Reserve Watershed); and (3) Little River Watershed (rated as a Low Reserve Watershed).

Plaintiffs argue that the watershed analyses are necessary for the court to determine whether the BLM considered all relevant factors in determining that the Rickard Creek project was a non-high priority site. Plaintiffs argue that because the Pilot Project is the only study conducted by the BLM or the Forest Service that evaluates the amounts of suitable habitat, reserves and federal land a watershed can have to qualify for a non-high priority site status, the BLM must have, or should have considered this evidence in making its non-high priority determination.

Defendant argues that it did not rely on the watershed analyses in making its non-high priority determination, but rather relied on the "Proposal for Non-High Priority Site Status for the Red Tree Voles in the Rickard Creek Project Area" (AR 675-84), which is included in the record. Further, defendant argues that the

watershed analyses do not provide information relevant to the
Rickard Creek project non-high priority determination, and
therefore are not necessary to determine whether the BLM considered
all relevant factors.

I find that the watershed analyses do not qualify under the
first exception. First, I find that the BLM neither directly nor
indirectly relied on the proposed exhibit in making its non-high
priority determination. The original record in this case explains
the BLM's determination that the Rickard Creek project is a non-
high priority site and demonstrates that it considered the relevant
factors. Second, after carefully reviewing both the watershed
analyses and the Pilot Project, I find that the watershed excerpts
are not necessary to determine whether the BLM considered all
relevant factors in making that decision. While excerpts provide
the specific acreage of federal land within three of the Pilot
Project watersheds and the percentage of that land that is
reserved, the excerpts say nothing about the red tree voles or
their persistence in these watersheds.

Moreover, the Pilot Project itself provides sufficient
information regarding the characteristics of the watersheds, how
the watersheds were categorized, and what factors were instrumental
in making those considerations. It is proper to deny
supplementation where the record contains documents from which the

court can extract the information sought to be admitted. Sw. Ctr. for Biological Diversity v. U.S. Forest Serv., 100 F.3d 1443, 1451 (9th Cir. 1996)("The information contained in these documents can either be extracted from the record or is not necessary to this court's review of the Forest Service's action.").

Plaintiffs' argument under the third exception also fails. Plaintiffs maintain that the watershed analyses "provide[] necessary background data to explain (or in this case, refute) the BLM's technical determination that the Rickard Creek project area is a non-high priority site for voles." (Doc. #26-1 at 6). The narrow exception for technical or complex subjects is limited to situations where "supplementing the record is necessary to explain technical terms or complex subject matter." Ctr. for Biological Diversity, 450 F.3d at 943. I find that the watershed analyses are not necessary to explain the BLM's priority determination for the Rickard Creek Project. The BLM's determination was based on a study it conducted pursuant to the project, and as explained above, that study sufficiently explains how the BLM made their priority determination. The watershed analyses merely provide background information that could otherwise be derived from documents already in the record. Therefore, I conclude that the watershed analyses do not meet either the first or third exception to the general rule against supplementing the administrative record.

IV. CONCLUSION

For the foregoing reasons, plaintiffs' motion to supplement the administrative record (doc. 26) is DENIED.

IT IS SO ORDERED.

DATED this 4th day of May, 2013.

_____
Ann Aiken
United States District Judge

13 - OPINION AND ORDER